IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAUL GILLPATRICK and NICCOLE WETHERELL,<br><br>    Plaintiffs,<br><br>    v.<br><br>SCOTT FRAKES, DIRECTOR, ANGELA FOLTS-OBERLE, ACTING WARDEN, and MICHELE CAPPS, WARDEN, in their official capacities,<br><br>    Defendants. | Case No. 4:18-cv-03011<br><br>DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Scott Frakes, Angela Folts-Oberle, and Michele Capps (in their official capacities) (collectively "the Defendants"), pursuant to Fed. R. Civ. P. 56 and NECivR 56.1, submit this brief in opposition to the Plaintiffs' cross-motion for summary judgment (Filing 51).

In their brief in support of their own motion for summary judgment, the Defendants addressed both conceivable remedies for the facilitation of the Plaintiffs' marriage request: physical transportation of one of the Plaintiffs to the other for a wedding ceremony or the theoretical "e-wedding" ceremony by videoconference. (*See* Filing 49.) The Defendants conducted a *Turner*-based analysis to justify the denial of *both* avenues because, up to that point, it remained unclear to the Defendants precisely which one the Plaintiffs were actually seeking—*i.e.*, which they would ultimately ask this Court to compel upon the Defendants through an injunction.

1

With the filing of their principal summary judgment brief, (Filing 53), the Plaintiffs have narrowed the issues—and this Court's analytical task—considerably. They have expressly and unambiguously stated that their goal is a wedding ceremony by videoconference, (Filing 53 at 13 ("Gillpatrick and Wetherell are asking for an e-wedding.")), and they foreclosed any request for physical transportation. (*Id.* at 15 n.6 ("[Defendant Frakes'] 'no transportation' assertion is a red herring considering that Gillpatrick and Wetherell are not asking to be transported.").) Accordingly, the only issue remaining is whether it was constitutionally permissible for the Defendants to deny the Plaintiffs' request for an "e-wedding."

Resolving that narrow issue is not difficult. The Defendants have already established that the plain language of the applicable Nebraska marriage statute requires that in a valid marriage ceremony, "the parties shall solemnly declare *in the presence of* the magistrate or minister and the attending witnesses, that they take each other" as spouses. Neb. Rev. Stat. § 42-109 (emphasis added). The Plaintiffs have neither overcome that clear statutory requirement nor pointed to any provision of the Constitution that would oblige them to facilitate a ceremony that would be legally invalid under Nebraska law.

This brief will respond to the Plaintiffs' fact statement pursuant to NECivR 56.1(b)(1). It will then briefly respond to the limited points the Plaintiffs have offered that are pertinent to the dispositive question of whether Nebraska's marriage laws allow for a videoconference ceremony. In all respects, the Defendants stand in full on the arguments set forth in their principal summary judgment brief (Filing 49).

## RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

1 through 34: The assertions set forth in these paragraphs may be deemed admitted for purposes of this motion. Notwithstanding any disagreement regarding the materiality of every single assertion in these paragraphs, it is sufficient to respond that it is undisputed that the Plaintiffs are currently incarcerated in separate Nebraska prisons, that their requests to marry have been denied, and that they have exhausted their respective inmate grievance processes.

35. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional.[1]

36. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

37. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

---

[1] The Plaintiffs have unambiguously specified that their request is for an "e-wedding" by videoconference. (Filing 53 at 13.) That request was denied based on NDCS officials' understanding that Nebraska law requires the parties to a marriage ceremony to be physically present. (Frakes Depo. 73:6-74:12); Neb. Rev. Stat. § 42-109 ("the parties shall solemnly declare *in the presence of* the magistrate or minister and the attending witnesses, that they take each other" as spouses (emphasis added)).

3

38. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. Plaintiff Wetherell's "satisfaction" with a videoconference wedding ceremony is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

39. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. Plaintiff Wetherell's willingness to reimburse the Nebraska Department of Correctional Services ("NDCS") for the incidental expenses associated with an "e-wedding ceremony" is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

40. It is admitted that the marriage license in the record at (Filing 52-7) is valid for one year from the date of its issuance, pursuant to Neb. Rev. Stat. § 42-104.

41. Paragraph 41 is admitted.

42. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. Pastor Bock's willingness to "preside over" the Plaintiffs' proposed "e-wedding" is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

43. Paragraph 43 is admitted.

44. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally

4

immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

45. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

46. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The views of other inmates are legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

47. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. Plaintiff Gillpatrick's "satisfaction" with a videoconference wedding ceremony is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

48. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. Plaintiff Gillpatrick's willingness to reimburse NDCS for the incidental expenses associated with an "e-wedding ceremony" is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

49. Paragraph 49 is admitted. It is immaterial, however, since NDCS' now-governing inmate marriage policy is Policy No. 205.04 (rev. Dec. 31, 2018) (in the record at Filings 50-5 and 52-15).

50. Paragraph 50 is admitted.

51. Paragraph 51 is admitted.

52. Paragraph 52 is admitted.

53. Paragraph 53 is technically accurate but it is misleading insofar as it does not provide adequate context surrounding Warden Capps' testimony. It is true that she testified that the sole reason to deny the marriage was based on security, but she was answering in the context of the Plaintiffs being physically transported to facilitate the marriage. (Capps Depo. 29:1-30:13.)

54. Paragraph 54 is technically accurate but it is misleading insofar as it does not provide adequate context surrounding former Warden Davidson's testimony. The relevant exchange was as follows:

Q. And is there anything that you know about her in those records that would cause you to think that her application should be denied because it was necessary for the good order of the institution?

A. Again, if she's requesting to marry someone at our facility, someone from the community, then that would meet the requirements of the policy, so there is no transportation, there is no movement, she's marrying someone inside of our facility, someone coming from the community, and there is a process that has to be completed. I mean, the people that are coming in have to have a security check run on them, all those things that are required by policy. In that situation, if all those indicators are met, then it should not be a problem.

(Davidson Depo. 24:7-23.)

55. Paragraph 55 is admitted.

56. Paragraph 56 is admitted.

57. Paragraph 57 is admitted.

58. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The existence of videoconference facilities at the Nebraska State Penitentiary is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

59. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The existence of a program for inmate participation in parent-teacher conferences by videoconference is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

60. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The existence of videoconference facilities at the Nebraska Correctional Center for Women is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

61. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. The existence of telepsych facilities within NDCS prisons is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

62. Even assuming this assertion is true for purposes of this motion, it is not material to any issue before the Court. NDCS' possession and use of videoconference technology is legally immaterial to the Court's analysis of whether the Defendants' Nebraska law-based denial of the marriage requests was constitutional. *See also* Footnote 1.

63. Paragraph 63 is admitted.

64. Paragraph 64 is admitted.

65. Paragraph 65 is admitted. It is immaterial, however, since NDCS' now-governing inmate marriage policy is Policy No. 205.04 (rev. Dec. 31, 2018) (in the record at Filings 50-5 and 52-15).

66. Paragraph 66 is admitted.

67. Paragraph 67 is admitted, with the clarification that the inmate marriage policy is numbered Policy No 205.04; it is not an "AR." (Filing 50-5 and 52-15.)

68. Paragraph 68 is admitted.

## ARGUMENT

I. **The Constitution does not require the State of Nebraska to facilitate for the Plaintiffs an "e-wedding" videoconference marriage ceremony that would be legally invalid under Nebraska law.**

To determine whether a prison regulation which impinges on inmates' constitutional rights can be sustained, the *Turner* framework established "four factors that courts should consider in making that determination": (1) "whether there is a 'valid rational connection' between the prison regulation and the [legitimate] government interest justifying it"; (2) "whether there is an alternative means available to the

8

prison inmates to exercise the right"; (3) "whether an accommodation would have 'a significant "ripple effect" 'on the guards, other inmates, and prison resources"; and (4) "whether there is an alternative that fully accommodates the prisoner 'at de minimis cost to valid penological interests.'" *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

The "regulation" at issue here is the Defendants' denial of the Plaintiffs' request to marry by videoconference. From the parties' respective fact statements, there is no genuine dispute that the basis for that denial is the Defendants' understanding that Nebraska law requires parties to a wedding ceremony to be physically present. The dispositive question, then, is whether that is actually true under the Nebraska marriage statutes. If so, then the *Turner* analysis effectively collapses into that single legal question, since compliance with state law is a facially, self-evidently legitimate governmental interest. If not, then the *Turner* analysis itself is unnecessary since the Defendants would not deny the Plaintiffs a ceremony afforded them under Nebraska law.

In other words, this case turns entirely on whether an "e-wedding" is legal under Neb. Rev. Stat. § 42-109. Accordingly, mindful to avoid burdening the Court with any more briefing than is necessary, the Defendants will not respond to every aspect of the Plaintiffs' sprawling argument and will instead focus on part I-B of the Plaintiffs' brief. That argument—first appearing on page thirty-two of a fifty-five page filing—is the only portion of the Plaintiffs' brief to substantively address the central

9

question of whether Nebraska's marriage laws allow the "e-wedding" the Plaintiffs seek.

### A. Neb. Rev. Stat. § 42-109 requires *physical* presence.

This case presents the Court with a question regarding the meaning of a term in a state statute. Although, as the Defendants will again show, the answer to that question is uncomplicated, it is nevertheless a question upon which the Nebraska Supreme Court has not yet ruled.[2] When presented with a state law issue on which the state's highest court has not ruled, a federal court must predict, as best it can, how the state's highest court would rule by considering relevant state precedent, analogous decisions, considered dicta, and any other reliable data. *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2013). In doing so here, the Court is bound by Nebraska's rules of statutory construction in its analysis. *Id.*

"In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself." *Cookson v. Ramge*, 299 Neb. 128, 131, 907 N.W.2d 296, 299 (2018).

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory

---

[2] It is worth noting again that when this case was in state court, the Nebraska Supreme Court expressly did not decide the issue since the lower state court's order could be reversed *and vacated* on procedural grounds. *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 883, 902, 902 N.W.2d 115, 119, 130 (2017). Contrary to the Plaintiffs' belief, (Filing 53 at 13 n.3), because the order was vacated, it is *not* "informative and persuasive."

words which are plain, direct, and unambiguous. *Archer Daniels Midland Co. v. State*, 290 Neb. 780, 788, 861 N.W.2d 733, 739 (2015).

Here, "presence" in Neb. Rev. Stat. § 42-109 is just such a term. As the Defendants have already shown in their principal brief, (Filing 49 at 17-18), the plain and ordinary meaning of "presence" offers the Plaintiffs no support. *See* Black's Law Dictionary 1302 (9th ed. 2009) ("presence" alternatively defined as "[t]he state or fact of being *in a particular place* and time" or "close *physical* proximity coupled with awareness" (emphasis added)); *see also State v. Gilliam*, 292 Neb. 770, 781 & n.32, 874 N.W.2d 48, 57 (2016) ("[Nebraska Supreme Court] often turn[s] to dictionaries to ascertain a word's plain and ordinary meaning.")

Of course, as the Plaintiffs correctly observed in their brief, the statute "has not changed so much as a comma since its adoption when Nebraska was a territory in 1866." (Filing 53 at 34.) So reviewing the 19th century public meaning of "presence" is appropriate. That is similarly unhelpful to the Plaintiffs. *See, e.g.*, Webster's American Dictionary of the English Language 636 (N. & J. White, 15th ed. 1838) ("presence" alternatively defined, in pertinent part, as: "1. The existence of a person or thing in a certain place. 2. A being in company near or before the face of another. 3. Approach face to face or nearness of a great personage. 4. State of being in view; sight.").

In sum, it is clear that the plain and unambiguous public meaning of "presence" in § 42-109—both now and at the time of the statute's adoption—includes a *physical* presence requirement. The Plaintiffs proposed reading is simply untenable in the face of these definitions.

11

Moreover, it is a basic principle of statutory construction that "[a] court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme, giving effect to every provision." *Archer Daniels Midland Co.*, 290 Neb. at 788, 861 N.W.2d at 740. "[S]tatutes relating to the same subject are in pari materia and should be construed together." *Adair Asset Mgmt., L.L.C. v. Terry's Legacy, LLC*, 293 Neb. 32, 37, 875 N.W.2d 421, 425 (2016). "[W]here the same words are used repeatedly in the same act, unless the context requires otherwise, the words are to have the same meaning." *Id.*

Here, Nebraska's marriage statutes are primarily codified at Neb. Rev. Stat. §§ 42-101 through 42-118. Section 42-108, which governs who may perform a marriage ceremony, states in pertinent part: "Every such person performing the marriage ceremony shall make a return of his or her proceedings in the premises, showing the names and residences of at least two witnesses who were *present at* such marriage." (emphasis added); *see also* Neb. Rev. Stat. § 42-110 (same phrase). These statutes, by their terms, clearly anticipate a physically unified marriage ceremony at which witnesses are "present." To read "present" in these provisions accordingly, but "presence" in § 42-109 to permit a remote ceremony by videoconference, would be to effectively interpret the same term differently in two parts of the same statutory scheme. That is inconsistent with fundamental tenets of statutory interpretation.

The Plaintiffs' varied arguments to the contrary are unavailing. The Plaintiffs' references to Nebraska's historical recognition of common law is, as best the Defendants can discern it, an argument that because the state once provided for the validity

of marriages which had not been solemnized, the statutory solemnization requirements do not matter. That is self-defeating for the Plaintiffs, since the entire question here is whether an "e-wedding" would satisfy precisely those statutory requirements.[3]

Likewise, the Plaintiffs' reliance on *Gibson v. Gibson*, 24 Neb. 394, 39 N.W. 450 (1888), is misplaced. *Gibson* concerned whether there was evidence of what amounted to a common law marriage under *Illinois* law. 39 N.W. at 466 (only N.W. reporter citation available on Westlaw). Whether the marriage would have been valid had it been entered into in Nebraska was not relevant, since "all marriages contracted without [Nebraska], which would be valid by the law of the country in which the same were contracted, shall be valid in all courts and places in [Nebraska]." *Id.*; *see also* Neb. Rev. Stat. § 42-117 (modern codification of same). Even analogizing the *Gibson* reasoning to a Nebraska wedding, it still does not help the Plaintiffs' cause since the case was not interpreting the specific requirements of Nebraska's ceremonial statute, under which the Plaintiffs wish to proceed.

Finally, although certainly inapplicable to the Nebraska statutory question, the litany of cases cited at pages 25-31 of the Plaintiffs' brief is similarly unhelpful to any other aspect of this case. Among the other issues with those cases, all but one involved proposed marriages between prisoners and non-prisoners. *Miller v. Wenerowicz*, 648 F. App'x 161, 162 (3d Cir. 2016) (unpublished); *Reed v. Kemper*, 673 F.

---

[3] Indeed, even if Nebraska *still* recognized common law marriage, the comparison would not help the Plaintiffs since the e-wedding ceremony would not even satisfy the ancient requirements for a common law marriage. Even under the Plaintiffs' creative inferred hypothetical, they must meet either the ceremonial requirements under the statute *or* the common law requirements. They cannot hybridize the two in order to redefine a statutory term.

13

App'x 533, 534 (7th Cir. 2016) (unpublished); *Riker v. Lemmon*, 798 F.3d 546, 548 (7th Cir. 2015); *Toms v. Taft*, 338 F.3d 519, 521 (6th Cir. 2003); *Martin v. Snyder*, 329 F.3d 919, 920 (7th Cir. 2003); *Aliviado v. Kimoto*, Civ. No. 12-259, 2012 WL 3202222, at *1-2 (D. Haw. Aug. 2, 2012); *Buehl v. Lehman*, 802 F. Supp. 1266, 1267 (E.D. Pa. 1992); *Langone v. Coughlin*, 712 F. Supp. 1061, 1062 (N.D.N.Y. 1989); *Salisbury v. List*, 501 F. Supp. 105, 106 (D. Nev. 1980); *Vazquez v. New Jersey Dept. of Corr.*, 791 A.2d 281 (N.J. Super. Ct. App. Div. 2002). In the sole cited case that involved two current prisoners, one of them was incarcerated in another state, and then the court only held that denying the plaintiff a videoconference accommodation *for marriage counseling* in order to "progress[] toward marriage approval until [his fiancé] is released from prison" could not be sustained under *Turner*. *Zastrow v. Pollard*, No. 11-C-371, 2013 WL 1288040, at *6 (E.D. Wis. Mar. 26, 2013) (emphasis added).

The Sixth Circuit's *Toms v. Taft* decision has been much-heralded by the Plaintiffs as "squarely in support" of their position. (Filing 53 at 27.) It is not. *Toms* involved the engagement of an inmate and a non-inmate and an Ohio requirement at both marriage applicants appear in person for a license. 338 F.3d at 521. Prison officials refused to either transport the plaintiff inmate or to appoint a corrections employee as a temporary "deputy clerk" to accommodate his need to apply in person for the license, even though that option was available. *See id.* at 522. This refusal prevented the marriage, even though the non-inmate fiancé presumably could have come to the prison in person for the ceremony. As quoted by the Plaintiffs here, the Sixth

14

Circuit went on to hold that in the future, denying an inmate the "affirmative assistance" necessary to obtain a marriage license—where doing so completely frustrates the marriage right itself and is unrelated to a legitimate penological interest—would be legally akin to an outright prohibition. *See id.* at 526-28. In doing so, the Sixth Circuit did not re-write Ohio's in-person license application law, but rather held that prisons must accommodate an inmate's need to comply with that law where not doing so serves no valid government interest.

Here, Nebraska has not denied the Plaintiffs the ability to obtain a license (they have one) or denied them any accommodation that would be legal under Nebraska law, as the Ohio officials did by denying a temporary deputy appointment for the inmate's license application. They have denied the videoconference ceremony sought by the Plaintiffs because, as established above, it would be legally invalid in Nebraska. That significant factual distinction renders *Toms* inapplicable here.

The Court's analysis should end here. The Defendants have shown that § 42-109, by its express terms, contains a physical presence requirement for a marriage ceremony. In order for a court to go beyond the statute's language—*e.g.*, to inquire into a statute's legislative history—the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous. *Cookson*, 299 Neb. at 131, 907 N.W.2d at 299. With "presence" established as an unambiguous term requiring no interpretation to discern its plain and ordinary meaning, the Court's work should be complete.

If the Court disagrees, the Defendants would again urge the Court to consider ordering the parties to address whether this question should be certified to the Nebraska Supreme Court. (Filing 49 at 18 n.2.) Again, the Defendants are not specifically moving for certification given their position on the clarity of the statutory text. But if the Defendants are mistaken in that view, then the question is necessarily so weighty—and the consequences for Nebraska's marriage laws so profound—that the answer is best delivered by the Nebraska Supreme Court as "the final arbiter of Nebraska law." *State ex rel. Rhiley v. Nebraska State Patrol*, 302 Neb. 241, 255, 917 N.W.2d 903, 913 (2018). In the Defendants' view, the Plaintiffs are proposing a radical judicial re-write of Nebraska's marriage ceremony statute. If their policy goal is to come to fruition, the appropriate venue is the Nebraska Legislature. Short of that, it should at least be decided by Nebraska's highest court.

## CONCLUSION

The Plaintiffs' motion for summary judgment should be overruled and summary judgment should be entered in favor of the Defendants.

Submitted April 22, 2019.

        **SCOTT FRAKES,**
        **ANGELA FOLTS-OBERLE,**
        **and MICHELE CAPPS,**
        **Defendants (in their official capacities)**

        DOUGLAS J. PETERSON, NE #18146
        Attorney General of Nebraska

        *s/David A. Lopez*
        DAVID A. LOPEZ, NE #24947
        Deputy Solicitor General

RYAN S. POST, NE #24714
BEN GOINS, NE #26034
Assistant Attorneys General

OFFICE OF THE ATTORNEY GENERAL
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
dave.lopez@nebraska.gov
ryan.post@nebraska.gov

COUNSEL FOR THE DEFENDANTS

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2019, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, using the CM/ECF system, causing notice of such filing to be served upon Plaintiffs' counsel of record.

By: *s/ David A. Lopez*