IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAUL GILLPATRICK and NICCOLE WETHERELL,<br><br>                Plaintiffs,<br><br>    v.<br><br>SCOTT FRAKES, Director, in his official capacity; MICHELE CAPPS, Warden, in her official capacity; and ANGELA FOLTS-OBERLE, Acting Warden, in her official capacity,<br><br>                Defendants. | 4:18CV3011<br><br>MEMORANDUM AND ORDER |

    This matter is before the Court on a Motion for Summary Judgment (Filing No. 51) filed by plaintiffs Paul Gillpatrick ("Gillpatrick") and Niccole Wetherell ("Wetherell" and collectively, "plaintiffs") and a Motion for Summary Judgment (Filing No. 48) filed by defendants Scott Frakes ("Frakes"), in his official capacity as Director of Nebraska Department of Correctional Services ("NDCS"), Michele Capps ("Capps"), in her official capacity as Warden of Nebraska State Penitentiary ("NSP"), and Angela Folts-Oberle ("Folts-Oberle" and collectively, "defendants"), in her official capacity as Acting Warden of Nebraska Correctional Center for Women ("NCCW"). For the reasons stated below, both motions are granted in part and denied in part.

## I.    BACKGROUND[1]

###     A.    The Parties

    Gillpatrick and Wetherell are engaged to be married but so far have been unable to do so. Gillpatrick is a state prisoner serving a 55-to-90-year sentence at NSP in Lincoln, Nebraska. Wetherell is a state prisoner serving a life sentence at NCCW in York, Nebraska.

---

[1] The relevant facts as set forth here are undisputed.

Neither Gillpatrick nor Wetherell can be transferred out of a medium or maximum-security facility. They are both over the age of eighteen, not related, unmarried, and have obtained a marriage license.

Capps and Folts-Oberle evaluate and may deny inmate-marriage requests. Frakes, however, is the "ultimate decisionmaker" on inmate marriages.

### B. Factual Background and Exhaustion

Sometime before August 2012, the plaintiffs each made requests to marry by submitting marriage-intention forms as required by NDCS Administrative Regulation Number 208.01 ("Regulation 208.01") at their respective facilities. At that time, Regulation 208.01 governed inmate marriages,[2] providing "[i]nmates in [NDCS]'s custody will be allowed to marry unless the Warden finds that the marriage presents a threat to security or order of the institution or to public safety." For an inmate to have a wedding approved and arranged, Regulation 208.01 directed them to submit a marriage-intention form to the religious coordinator at their facility.

Diana Sabatka-Rine ("Sabatka-Rine") and Denise Skrobecki ("Skrobecki"), then the wardens of NSP and NCCW, denied the plaintiffs' initial marriage requests. On May 15, 2012, Wetherell submitted an inmate-interview request indicating that she understood neither she nor Gillpatrick could be transported to another NDCS facility due to their restrictions and asked to instead to be married by telephone. That request was

---

[2]On June 30, 2016, NDCS adopted NDCS Inmate Marriage Policy Number 205.04 ("Policy 205.04") to govern inmate marriages. Under that policy,

> Inmates will normally not be permitted to marry other inmates due to potential risks to safety, security or good order of the facility. If an inmate wants to marry another inmate, he or she may file a grievance of a sensitive nature to the Director outlining special circumstances which may warrant an exception. The director reserves the right to approve inmate-to-inmate marriages in the case of special circumstances.

2

denied. The denial stated a telephonic-wedding ceremony would not be valid because both parties need to be present.

Both plaintiffs then instituted the formal inmate-grievance process to obtain permission to marry. In her grievance forms, Wetherell again recognized that she and Gillpatrick could not be transported to other NDCS facilities and requested to either be transported to a courthouse or to be married by telephone. On September 14, 2012, Wetherell's final grievance was denied. The denial stated, "You are grieving that [NDCS] will not transport you and your fiance to a courthouse to be married. [NDCS] does not provide transportation for that purpose." NDCS counsel, writing for the then-Director of NDCS, informed the plaintiffs on April 13, 2013, that "legal and security concerns prohibit NDCS from facilitating a marriage ceremony for [them]." On September 4, 2013, Gillpatrick's final grievance was also rejected. That denial stated, "[NDCS] will not transport an inmate assigned to a secure facility to another secure facility to get married." The plaintiffs assert that they have exhausted available NDCS procedures to obtain permission to marry. The defendants do not dispute that assertion.

### C. Procedural History and State-Court Action

On February 25, 2014, the plaintiffs filed suit against NDCS, Sabatka-Rine, Skrobecki, and Michael Kenney ("Kenney," then the Director of NDCS) in the District Court of Lancaster County, Nebraska ("state court"), seeking declaratory and injunctive relief based on their constitutional right to marry. On June 10, 2014, the plaintiffs filed an amended complaint naming only Sabatka-Rine, Skrobecki, and Kenney in their personal capacities.

In state court, the plaintiffs requested to be married through an electronic wedding ceremony ("e-wedding ceremony") using Skype (an electronic-communication application) or similar videoconferencing technology. The named defendants at that time resisted that request based on their understanding that Neb. Rev. Stat. § 42-109, which requires parties seeking to marry under Nebraska law to "solemnly declare in the presence

of a magistrate or minister and the attending witnesses, that they take each other as husband and wife," strictly mandates actual physical presence of the wedding participants. The plaintiffs moved for summary judgment on October 1, 2015, and the state court granted that motion on February 2, 2016. *See Gillpatrick v. Neb. Dep't of Corr. Servs.*, Case CI14-669 (Neb. Dist. Ct. Feb. 2, 2016). The state court explained that the defendants had no security or rehabilitation concerns but "relied only upon their interpretation of a statute . . . that flies in the face of the Plaintiffs' constitutional rights." The state court concluded that "the current position, or policy, of the Defendants prohibiting the Plaintiffs from marrying impermissibly burdens their right to marry."

The defendants appealed the state court's decision, and on September 29, 2017, the Nebraska Supreme Court reversed and remanded on procedural grounds, expressly declining to reach the merits of the matter. *See Gillpatrick v. Sabatka-Rine*, 902 N.W.2d 115, 119 (Neb. 2017). The plaintiffs again amended their complaint on January 2, 2018, naming Skrobecki, Robert Madsen (the then-Warden of NSP), and Frakes in their official capacities. The defendants removed (Filing No. 1) the case to this Court on January 23, 2018. *See* 28 U.S.C. §§ 1331 and 1441(a).

### D. Present Action

The plaintiffs' first request in this Court largely mirrors the one they made in state court. Conceding they cannot be transported for a traditional ceremony, the plaintiffs seek to solemnize their marriage through an e-wedding ceremony. They contend the ceremony could be accomplished using technology which already exists in NDCS facilities, that is, (1) NDCS's videoconferencing equipment or (2) NDCS's wi-fi, provided NDCS permits the plaintiffs to arrange for laptops to be brought into the respective facilities for the ceremony.

The defendants agree that, given the length of the plaintiffs' sentences and the restrictions on transporting them, an e-wedding ceremony is the only way for the plaintiffs

4

to marry. But they refuse to facilitate an e-wedding ceremony solely based on their understanding that it would be an invalid proceeding under § 42-109.

In addition to the e-wedding-ceremony issue, the parties also now dispute whether Policy 205.04—which NDCS adopted more than two years after the plaintiffs' filed the state-court action—governs the plaintiffs' marriage requests. The plaintiffs argue that the later-adopted Policy 205.04 should not apply to their marriage requests and that if it does, it is unconstitutional on its face.

In their Second Amended Complaint (Filing No. 1-1), the plaintiffs seek (1) a declaration "that the NDCS policies, customs, and practices as applied against [them] in this matter" are unconstitutional, (2) a declaration that the denials of their marriage-intention forms and administrative grievances "violated [their] constitutional right to marry,"[3] (3) a preliminary and permanent injunction "preventing the Defendants and their officers, agents, servants, and employees from evaluating or denying" their marriage requests with unconstitutional criteria, (4) a preliminary and permanent injunction "preventing the Defendants and their officers, agents, servants, and employees from relying on past denials" of their marriage-intention forms for any purpose, (5) costs and attorney fees, and (6) any "other relief as the Court may deem just and proper." In their response (Filing No. 54) to the defendants' motion for summary judgment, the plaintiffs request injunctive relief "permanently enjoining and ordering the Defendants to authorize the use of suitable technology so that the Plaintiffs may wed," with a renewed prayer for costs and attorney fees.

---

[3]In their marriage-intention and grievance forms, the plaintiffs sought to be transported for a traditional ceremony or to be married over the telephone. They no longer pursue those means. Accordingly, the defendants are entitled to summary judgment with respect to this request.

5

## II. DISCUSSION

### A. Standard of Review

The Court considers cross-motions for summary judgment separately, "viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences." *LaCurtis v. Express Med. Trans., Inc.*, 856 F.3d 571, 576 (8th Cir. 2017) (quoting *Dallas v. Am. Gen. Life & Accident Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013)). Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is particularly appropriate where unresolved issues are primarily legal rather than factual in nature. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

### B. Right to Marry

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the right to marry. *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978). Prisoners do not forfeit that right simply because they are incarcerated. *Turner v. Safley*, 482 U.S. 78, 84 (1987). But the right is not unlimited. *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011). Prison officials may place limitations on the exercise of prisoners' rights to serve "the needs of the penal system." *Id.*

"Constitutional claims that would normally receive strict scrutiny are evaluated under a lesser standard of scrutiny in the prison setting." *Id.* In *Turner v. Safley*, the Supreme Court held that a prison regulation or action is valid even if it "impinges on inmates' constitutional rights . . . if it is reasonably related to legitimate penological interests." 482 U.S. at 89. In making that determination courts consider:

> (1) whether there is a 'valid, rational connection' between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have 'a significant "ripple effect"' on the guards, other inmates, and prison resources; and (4) whether there is an

alternative that fully accommodates the prisoner 'at de minimis cost to valid penological interests.

*Simpson v. County of Cape Girardeau*, 879 F.3d 273, 278 (8th Cir. 2018) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004)).

The Court must afford great deference to prison officials' judgment and expertise, "particularly with respect to decisions that implicate institutional security." *Murphy*, 372 F.3d at 983 (quoting *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004)). No distinction exists between a prison official's action and their refusal to aid a prisoner in exercising a constitutional right "where such refusal completely frustrates the right." *Tom v. Taft*, 338 F.3d 519, 525 (6th Cir. 2003).

Prison officials do not bear the burden "to prove the validity of prison regulations." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). While prison officials must "'articulate their legitimate governmental interest in the regulation' and provide some evidence supporting their concern," *Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015) (quoting *Van den Bosch v. Raemisch*, 658 F.3d 778, 786 (7th Cir. 2011)), inmates bear "the ultimate burden of persuasion with regard to the reasonableness of a regulation," *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) (quoting *Jones v. Brown*, 461 F.3d 353, 360-61 (3d Cir. 2008)).

### 1. Policy 205.04

The Court's first order of business is to address the parties' dispute over Policy 205.04. Regulation 208.01 governed when the plaintiffs submitted their marriage requests, completed the grievance process, and originally filed this action in state court. But on June 30, 2016, NDCS implemented Policy 205.04, and the defendants include Policy 205.04 as part of their "[b]asis for the denial of the Plaintiffs' marriage requests."[4]

---

[4] The defendants emphasize, however, that their specific reason for denying the plaintiffs' marriage request remains their interpretation of § 42-109.

The plaintiffs are critical of the defendants "chang[ing] horses with a new regulation in 2016, after Plaintiffs had already filed suit in 2014." The plaintiffs contend this later-adopted Policy 205.04 "should not apply to them and, in any event, is an unsupportable standard when applied to their fundamental right to marry." In other words, the plaintiffs argue that if Policy 205.04 does govern their marriage requests, it is unconstitutional on its face.

In suits seeking injunctive relief, the Court may rely "on developments that postdate the pleadings and pretrial motions" to determine whether an inmate is entitled to relief. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Here, the plaintiffs seek declaratory and injunctive relief, including a request to enjoin the defendants from considering their marriage requests with unconstitutional criteria. Accordingly, the defendants' current inmate-marriage policy, Policy 205.04, may be implicated, and the Court will consider the plaintiffs' facial challenge to Policy 205.04.

For Policy 205.04 to be valid, it must be "reasonably related to legitimate penological interests," which the Court determines by weighing *Turner*'s four factors. *See* 482 U.S. at 89. Under Policy 205.04, inmates are generally not permitted to marry one another unless they show "special circumstances which may warrant an exception." The NDCS Director "reserves the right to approve" marriages where those special circumstances are shown. Policy 205.04 does not define "special circumstances." Frakes testified in his deposition that a marriage for the benefit of a child or for an inmate's asset disposition are the only things he could think of which would potentially constitute special circumstances. He "has never granted permission to two prisoners to marry" under the policy. To support Policy 205.04, the defendants point to potential concerns about inmate coercion and health in inmate relationships.[5]

---

[5]The defendants' briefing focused on the validity of an e-wedding ceremony, declining to fully flesh out the rationale for Policy 205.04.

The Supreme Court's analysis in *Turner* is particularly illuminating here because Policy 205.04 mirrors the Missouri prison regulation found facially invalid by the Supreme Court in that case. The Missouri regulation prohibited inmates from marrying "unless the prison superintendent . . . approved the marriage after finding . . . compelling reasons to do so." 482 U.S. at 96. It did not define "compelling reasons" but the state said generally only a marriage for a child's benefit would justify a marriage. *Id.* at 96-97. The regulation prohibited marriages "between inmates and civilians, as well as marriages *between inmates*." *Id.* at 97 (emphasis added). The state named security and rehabilitation concerns as support for the regulation. *Id.* Namely, the state was worried about love triangles and female inmates becoming codependent on unsavory spouses. *Id.*

The Supreme Court concluded the regulation, as written, represented "an exaggerated response" to the state's objectives and struck it as facially invalid. *Id.* at 97-99. It pointed to "obvious, easy alternatives" such as a regulation which would generally permit marriages unless the state found a safety threat. *Id.* at 98. The Supreme Court rejected the love-triangle concern, concluding the regulation's prohibition on marriages would not prevent such entanglements. *Id.*

Based on the record in this case and the similarities between Policy 205.04 and the regulation in *Turner*, the Court finds Policy 205.04 "does not satisfy [*Turner*'s] reasonable relationship standard but rather constitutes an exaggerated response" to the defendants' stated concerns. *Id.* at 91. Much like the Supreme Court in *Turner*, this Court concludes Policy 205.04's marriage restriction is not rationally related to the defendants' articulated concerns about inmate coercion and health. Similar to love triangles, inmate coercion may occur in ordinary inmate relationships without a formal marriage, and those informal relationships may also affect inmate health. *See id.* at 98. Moreover, an "obvious, easy alternative[]" exists—Regulation 208.01 which generally allows inmates to marry unless NDCS officials identify a credible threat. *See id.* The Court sees no reason to conclude Policy 205.04 is valid when the Supreme Court determined that a nearly identical

9

regulation supported by similar rationale was not. *See id.* at 99. Policy 205.04 is facially invalid.

### 2. Refusal to Facilitate an E-Wedding Ceremony

The crux of the plaintiffs' constitutional complaint is the defendants' refusal to facilitate an e-wedding ceremony.[6] To be valid, the defendants' refusal must be "reasonably related to legitimate penological interests" under *Turner*'s four-factor reasonable-relationship test. *Turner*, 482 U.S. at 89.

The defendants have identified complying with their interpretation of state law as their "facially, self-evidently legitimate governmental interest." As stated above, § 42-109 requires parties seeking to marry in Nebraska to "solemnly declare in the presence of a magistrate or minister and the attending witnesses, that they take each other as husband and wife." The defendants contend "the plain and unambiguous public meaning of 'presence' . . . includes a *physical* presence requirement." Asserting the plaintiffs' desired ceremony requires effectively writing "presence" out of § 42-109, the defendants ask the Court not to "second-guess" the legal concerns of state correctional officers.[7]

The plaintiffs reject the defendants' interpretation of § 42-109 as unsubstantiated and entitled to no deference. According to the plaintiffs, at a minimum, § 42-109 does not prohibit electronic solemnization of a marriage. Noting that technology has changed in the 160 years since § 42-109 was passed, they contend a modern, reasonable construction of the statute "allows technological innovation to satisfy the presence requirement." The

---

[6]The parties agree transporting these plaintiffs for a marriage ceremony is impossible. Therefore, any discussion of security concerns and government interests related to transport is unnecessary.

[7]The defendants request the Court to consider certifying this unsettled question of the meaning of "presence" under § 42-109 to the Nebraska Supreme Court pursuant to NECivR 7.4 if the Court is swayed by the plaintiffs' interpretation. The Court notes it peculiar that the defendants removed this action (which is their right) to this Court knowing the central question of state law but now ask the Court to consider sending this case back to state court. That request is denied.

plaintiffs believe this construction is consistent with other areas of law which utilize electronic presence, such as for court hearings. *See, e.g.*, Neb. Rev. Stat. §§ 24-303, 25-2704.

As the plaintiffs see it, the defendants' interpretation of the presence requirement, even if correct, is unconstitutional as applied to them (though the plaintiffs stress their "reasonable, twenty-first century understanding of presence" avoids this "constitutional crisis"). *See, e.g., Jones v. Perry*, 215 F. Supp. 3d 563, 574 (E.D. Ky. 2016) (finding an in-person requirement to obtain a marriage license unconstitutional as applied where a prospective spouse is incarcerated); *Amos v. Higgins*, 996 F. Supp. 2d 810, 813 (W.D. Mo. 2014) (same). While the plaintiffs recognize prison officials receive deference for their professional judgment and expertise in running a prison, the plaintiffs point out that interpreting marriage statutes does not fall within the purview of prison administration.

The plaintiffs also argue that the defendants have not articulated any legitimate penological interest to support their position. It is undisputed that the defendants have not barred the plaintiffs' e-wedding ceremony based on concerns for security, order, or resources in NDCS facilities. The plaintiffs reject the notion that interpreting or "[i]nserting the word physical" into § 42-109 could constitute a legitimate penological interest. In short, the plaintiffs contend it is unconstitutional for the defendants to deny their e-wedding ceremony where the defendants cannot identify credible institutional concerns to justify that decision.

The Court turns to *Turner*'s four factors to "determin[e] the reasonableness" of the defendants' denial of the plaintiffs' request for an e-wedding ceremony. 482 U.S. at 89. Most importantly, a "valid, rational connection" must exist between the defendants' refusal to facilitate the plaintiffs' e-wedding ceremony and "the legitimate governmental interest put forward to justify it." *Id.* "If there is no logical connection, then the [defendants' refusal] is arbitrary and unreasonable and cannot be sustained." *Simpson*, 879 F.3d at 279.

Harboring no security or institutional concerns with the plaintiffs' e-wedding ceremony, the defendants assert "compl[ying] with state law" as their clear government interest in this case. Even assuming the defendants' strict interpretation of § 42-109 is correct, the defendants have not explained how they would violate Nebraska law by allowing the plaintiffs' e-wedding ceremony. Under Nebraska law, individuals seeking to marry must acquire a marriage license from a Nebraska county clerk, solemnize their marriage through a ceremony, and then go back to the county clerk to record their marriage certificate. *See* Neb. Rev. Stat. §§ 42-104 to 13. Here, the plaintiffs have already obtained their marriage license and are merely asking the defendants to allow them to take the next step and participate in a ceremony which makes at least a colorable claim for satisfying § 42-109.[8] The plaintiffs are not requesting the defendants record or otherwise sanction or recognize their marriage under state law. Without explaining how they would violate state law or identifying any other material costs to them, the defendants have not articulated a legitimate government interest in barring the plaintiffs' proposed ceremony. *See Riker*, 798 F.3d at 553 (explaining that prison officials must articulate a legitimate government interest and provide evidence to support their concern).

Under these circumstances, where the plaintiffs make at least a colorable claim of satisfying § 42-109 and the defendants agree the plaintiffs' proposed ceremony, whatever its legal effect, poses no threat to security, order, or resources at NDCS, the Court concludes no valid, rational connection exists between the defendants' denial of the plaintiffs' e-wedding ceremony and their asserted justification for it. *See Turner*, 482 U.S. at 89-90.

---

[8]The Court need not (and does not) conclusively decide whether an e-wedding ceremony satisfies § 42-109. The plaintiffs assume the risk that their wedding may never be recorded and of having to defend their marriage's validity another day. The Court also expresses no opinion on whether the outcome would be different if the Nebraska legislature or Nebraska Supreme Court said only actual physical presence satisfies § 42-109.

12

The Court is aided in its conclusion here where the defendants concede that an e-wedding ceremony is the only possible means for the plaintiffs to exercise their fundamental right to marry. *See id.* at 90 (asking whether an alternative means exists for exercising the right). Deeming it unnecessary "since [an e-wedding ceremony] would be per se legally invalid at the outset," the defendants also do not refute the plaintiffs' assertion that the proposed ceremony "would have no or de minimis cost on facilities, staff, and resources." *See id.* (considering the impact of accommodating the right). Indeed, the technology to conduct the ceremony already exists in NDCS facilities. Though defendants need not "set up and then shoot down every conceivable method of accommodating the [plaintiffs'] constitutional complaint," the fact that the plaintiffs have identified an "alternative [to marry] that fully accommodates [their] rights" at no real cost—the e-wedding ceremony—is evidence that the defendants' denial is unreasonable. *Id.* at 90-91.

The defendants' refusal to facilitate the plaintiffs' e-wedding ceremony does not satisfy *Turner*'s reasonable-relationship standard. Without identifying any material costs or threats to NDCS facilities, the defendants have prohibited any means for the plaintiffs to at least attempt to solemnize their marriage. On the facts of this case, the Court concludes the defendants' denial of the plaintiffs' e-wedding ceremony is unreasonable.

### C. Relief

The Court weighs the following four factors when determining whether to issue a preliminary injunction:

> (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest.

*Powell v. Noble*, 798 F.3d 690, 697 (8th Cir. 2015). "The standard is the same for a permanent injunction except that the movant must show actual success on the merits."

13

*Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

The plaintiffs have met their burden for injunctive relief. They have prevailed on the merits of their claim that the defendants' denial of their proposed e-wedding ceremony is unreasonable here. The plaintiffs are suffering an ongoing, irreparable harm of being unable to exercise their fundamental right to marry. The defendants, on the other hand, have identified no material harm in facilitating an e-wedding ceremony. The balance of harms tilts in the plaintiffs' favor. *See id.* Finally, issuing a permanent injunction in this case is in the public interest which "is served by the preservation of constitutional rights." *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019).

Under these circumstances, the Court finds that the defendants should be enjoined from denying the plaintiffs' request to participate in an e-wedding ceremony. The Court expresses no opinion on what means the defendants should use to facilitate to the plaintiffs' e-wedding ceremony (or whether it ultimately is valid), so long as the defendants do not continue to refuse to allow the ceremony as to these two plaintiffs.

Based on the foregoing,

IT IS ORDERED:
1. Defendants Scott Frakes, Michele Capps, and Angela Folts-Oberle's Motion for Summary Judgment (Filing No. 48) is granted in part and denied in part.
    a. The defendants' motion is granted with respect to the plaintiffs' request for a declaration that the denials of the plaintiffs' marriage-intention forms and administrative grievances, which pursued means to marry that the plaintiffs have since abandoned (including transportation), were unconstitutional.
    b. The defendants' motion is denied in all other respects.
2. Plaintiffs Paul Gillpatrick and Niccole Wetherell's Motion for Summary Judgment (Filing No. 51) is granted in part and denied in part.

a. The Court declares that Nebraska Department of Correctional Services Policy Number 205.04 is facially unconstitutional under *Turner v. Safley*, 482 U.S. 78 (1987).

b. Frakes, Capps, and Folts-Oberle and their successors and designees are permanently enjoined from denying Gillpatrick and Wetherell's request to participate in an electronic wedding ceremony.

c. Frakes, Capps, and Folts-Oberle and their successors and designees are permanently enjoined from relying on past denials of Gillpatrick and Wetherell's marriage-intention forms and administrative grievance forms to deny Gillpatrick and Wetherell's request to participate in an electronic wedding ceremony.

d. The plaintiffs are awarded taxable costs against the defendants pursuant to Federal Rule of Civil Procedure 54(d)(1) and NECivR 54.1.

e. The plaintiffs are directed to submit any requests for attorney fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and NECivR54.3.

e. The plaintiffs' motion is denied in all other respects.

3. A separate judgment will issue.

Dated this 7th day of June 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge

15